**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **KAREN KRISTENSEN, ET AL.,** | § | |
| **Plaintiffs,** | § | |
| **v.** | § | |
| | § | **No. 1:17-CV-00126-DAE** |
| **UNITED STATES OF AMERICA,** | § | |
| **Defendant.** | § | |

**ORDER AND
REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE DAVID EZRA
UNITED STATES DISTRICT JUDGE:

Before the court are United States of America's Bill of Costs (Dkt. #106), Plaintiffs' Objections to Bill of Costs (Dkt. #107), Plaintiffs' Supplement to their Objections to Bill of Costs (Dkt. #110), and Defendant's Reply to Plaintiffs' Objection to Bill of Costs (Dkt. #111). Additionally before the court are Defendant's Motion to Strike Plaintiffs' Supplement to their Objections to Bill of Costs (Dkt. #114) and Plaintiffs' Response to Government's Motion to Strike Plaintiffs' Supplement to their Objections to Bill of Costs (Dkt. #115). After reviewing the filings, record, and the relevant case law, the undersigned issues the following Report and Recommendation to the District Court.[1]

## I.   BACKGROUND

As stated by District Judge David Ezra, "[t]his case arises out of an incomprehensible tragedy when, on February 22, 2015, Army Specialist Atase Giffa shot and killed his wife, injured and killed several other individuals, and then turned the gun upon himself." Dkt. #105 (Final

---

[1] These motions were referred by United States District Judge David Ezra to the undersigned for a Report and Recommendation. Dkt. #108.

Judgment). Plaintiffs brought this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1) and 2671, *et seq,* seeking around $60 million in monetary damages as compensation for personal injuries and wrongful deaths caused by the Defendant's negligence. After denying Defendant's Motion for Summary Judgment, Dkt. #24, and Motion for Reconsideration, Dkt. #42, and upon holding a two-week bench trial, the court entered judgment in Defendant's favor. Dkt. #105. Specifically, the District Judge found that the Defendant has sovereign immunity under the intentional tort exception of the FTCA as to the claims brought by the majority of the plaintiffs. Dkt. #105 at 65. Furthermore, the court determined that even if the Defendant was not immune, the Government did not negligently undertake a duty to Plaintiffs. *Id*. In so ruling, the court succinctly noted that "[t]his was a tragic event that affected many innocent lives, but this tragedy did not stem from the [Defendant's] negligence." *Id.* Accordingly, the court in its final judgment dismissed the case with prejudice. *Id.*

On February 18, 2020, the Defendant submitted its Bill of Costs totaling $27,423.32. Dkt. #106. Plaintiffs objected to the Bill of Costs on March 5, 2020, arguing (1) the District Judge did not award costs, (2) it would be an "inequitable . . . punish[ment] to award costs against Plaintiffs, and (3) Defendant's Bill of Costs is objectively wrong and not supported by receipts. Dkt. #107. Additionally, on March 12, 2020, Plaintiffs filed their Supplement to their Objections to Bill of Costs. Dkt. #110. That same day, Defendant filed its Reply. Dkt. #111.

Arguing Plaintiffs' supplementary filing was untimely and without leave of the court, Defendant filed its Motion to Strike Plaintiffs' Supplement to their Objections to Bill of Costs on March 20, 2020. Dkt. #114. Plaintiffs timely responded. Dkt. #115.

## II.     Legal Standard

Federal Rule of Civil Procedure 54(d)(1) states that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). The Fifth Circuit has explained that "Rule 54(d)(1) contains a strong presumption that the prevailing party will be awarded costs." *Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006); *see also Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985) (finding "the prevailing party is prima facie entitled to costs"). In fact, the denial of costs is considered "in the nature of a penalty," so that courts "may neither deny nor reduce a prevailing party's request for costs without first articulating some good reason for doing so." *Schwarz*, 767 F.2d at 131. That being said, "the decision whether to award costs ultimately lies within the sound discretion of the district court." *Marx v. General Revenue Corp.*, 568 U.S 371, 377 (2013). Notably, the court may only tax as "costs" those expenses listed in 28 U.S.C. § 1920, including:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under [28 U.S.C. § 1923];

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under [28 U.S.C. § 1828].

28 U.S.C. § 1920.

The party who seeks to recover costs has the burden of producing evidence properly documenting and establishing the costs incurred. *See Fogleman v. ARAMCO*, 920 F.2d 278, 285–86 (5th Cir. 1991). However, if the party being taxed with costs has not specifically objected, there

is a presumption that the costs being sought were necessarily incurred for use in the case. *Faludi v. U.S. Shale Sols., LLC*, CV H-16-3467, 2020 WL 2042322, at *2 (S.D. Tex. Apr. 28, 2020) (citing *Embotelladora Agral Regiomontana, S.A. de C.V. v. Sharp Capital, Inc.*, 952 F. Supp. 415, 417 (N.D. Tex. 1997)).

## III.   Analysis

Per its Bill of Costs, Defendant, the unequivocal prevailing party, seeks $27,423.32 in total costs. Dkt. #106. Plaintiffs request that the court exercise its discretion and decline to award costs under the *Pacheco v. Mineta* line of cases. Alternatively, Plaintiffs ask the court to find Defendant's Bill of Costs "objectively wrong in numerous spots and . . . not supported by receipts." Dkt. #107 at 2.

### A.   Motion to Strike

Before starting its bill of costs analysis, the court must first determine whether to strike Plaintiffs' Supplement to their Objections to Bill of Costs ("Supplement") pursuant to Defendant's Motion to Strike. Dkt. #110; Dkt. #114. The court notes that Plaintiffs' Supplement is divided into two distinct sections: a section asking the court to decline or reduce costs under the *Pacheco v. Mineta* line of cases and a section objecting to specific costs. *See* Dkt. #107, #110.

Plaintiffs' Supplement is untimely. Local Rule 54(b) clearly states that "[a]ny party opposing a proposed bill of costs must file an objection no later than 14 days after a proposed bill of costs is filed." Loc. R. 54(b). Plaintiffs' Objection to Bill of Costs ("Objection") is akin to a response, and Local Rule 7(f) permits a party to file a reply in support of its motion within 7 days of the response. Loc. R. 7(f). Defendant timely filed its Bill of Costs on February 18, 2020, Dkt.

#111, and Plaintiffs filed their Objection on March 5, 2020.[2] Dkt. #107.[3] After Plaintiffs filed their Objection, Defendant timely filed its reply on March 12, 2020. Dkt. #111, *see* Loc. R. 7(f). However, hours before Defendant filed its reply, Plaintiffs filed their Supplement without seeking leave from the court or attempting to confer with Defendant. Dkt. #110.[4] Because Plaintiffs' Supplement was filed without leave of the court or opposing counsel's permission, and because it violates deadlines set by local rules, it is untimely.

In addition to being untimely, Plaintiffs' Supplement is also an impermissible second bite of the apple. Despite their contentions to the contrary, Plaintiffs' Supplement puts forth a variety of new arguments that were left out of their Objection.[5] Plaintiffs do not propose any reason for why these new arguments were not originally included in their Objection, and local rules do not permit parties to essentially file two responses or objections. Moreover, by adding new arguments to their untimely Supplement, Defendant has not been given an adequate opportunity to reply. Such a result cannot stand.

For the foregoing reasons, the court strikes and will not consider Plaintiffs' Supplement as it relates to Plaintiffs' objection to specific costs. However, having reviewed Plaintiffs' Supplement and determined the court's disposition of Plaintiffs' *Pacheco* arguments would not

---

[2] Plaintiffs' Objection is untimely because it was filed 16 days after the Bill of Costs; however, it will be considered because Defendant has not moved to strike it. *See* Dkt. #107, #114.

[3] Plaintiffs erroneously argue their Objection was timely because Defendant's Bill of Costs gave notice that "3 days are added after the [deadline] would otherwise expire" under Federal Rule of Civil Procedure 6. Dkt. #115; Dkt. #106. However, Rule 6, also known as the "mail box rule," does not apply to service made through electric means. *See Lebow v. Deutsche Bank Nat'l Tr. Co.*, SA-18-CA-671-FB, 2019 WL 5026970, at *1 n.1 (W.D. Tex. Sept. 23, 2019) (Biery, J.) (citing *Heverling v. McNeil Consumer Pharmaceuticals, Co.*, Civil Action No. 1:17-CV-1433, 2018 WL 1293304 at *2 n.3 (M.D. Pa. Mar. 13, 2018) ("On April 28, 2016, the Supreme Court adopted changes to the Federal Rules of Civil Procedure. In pertinent part, the Court amended Rule 6(d) to remove 'electronic means' as a mode of service triggering an additional three days to act when a responsive period commences upon service.")). Because Defendant's Bill of Costs was filed and served electronically via CM/ECF, Rule 6 does not apply and Plaintiffs' deadline to file an objection was March 3, 2020.

[4] Plaintiffs do not belatedly seek leave to file their Supplement. *See* Dkt. #115.

[5] For example, Plaintiffs for the first time argue in their Supplement that Defendant should not be able to recover the costs of printing discovery requests because they were not necessary for trial. *Compare* Dkt. #107, *with* Dkt. #110.

change regardless of whether the court considers this filing, the court dismisses as moot Defendant's Motion to Strike (Dkt. #114) so far as it relates to Plaintiffs' *Pacheco* arguments. *See Smith v. City of Wiggins, Miss.*, 1:14-CV-26-HSO-RHW, 2015 WL 6872230, at *5 (S.D. Miss. Nov. 9, 2015) (similarly mooting a motion to strike an improperly filed brief because the supplemental briefing did not change the court's determination).

        **B**.    **Final Judgment Award of Costs**

Relying on Local Rule 54, Plaintiffs first argue that Defendant should not have been permitted to file its Bill of Costs because the District Court did not award costs in its final judgment. Dkt. #107 at 1.[6] That is, Plaintiffs argue that costs are appropriate under Local Rule 54 only if the District Court in its final judgment explicitly states the prevailing party is "awarded cost." *Id.*

It is undisputed that the District Court did not reference costs in its final judgment. *See* Dkt. #105. However, Federal Rule of Civil Procedure 54(d) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party." FED. R. CIV. P. 54(d). "A natural reading of Rule 54(d) would lead one to conclude that a judgment silent about costs is a judgment awarding costs because the district court has not provided otherwise." *Whatley v. AHF Fin. Services*, LLC, 4:11-CV-488, 2013 WL 4771466, at *2 (E.D. Tex. Sept. 5, 2013) (citing *Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542 (5th Cir. 1983) (holding that where a judgment is silent about costs, the judgment is one allowing costs by implication from Rule 54(d)), *overruled on other grounds by T. Gibbons, Inc. v. Crawford Fitting Co.*, 790 F.2d 1193 (5th Cir. 1986); *see also Williams v. Target Corp.*, 4:14-CV-62, 2015 WL 4885237, at *3 (E.D. Tex. Aug. 14, 2015) (same). This finding is consistent

---

[6] Local Rule 54(a) states that "[u]nless otherwise determined by the court, costs will be assessed in the final judgment in a case. A party awarded costs shall prepare and file a proposed bill of costs . . . ." Loc. R. 54(a).

with the Fifth Circuit's determination that a denial of costs is "in the nature of a penalty," and would suggest that while courts may assess costs in a final judgment per local rules, this is not their sole avenue to do so. *Schwarz*, 767 F.2d at 131. Thus, the explicit language demanded by Plaintiffs is unnecessary. Because the District Court's final judgment was silent about costs, Defendant, as the unequivocal prevailing party, was awarded costs by implication.

## C.   Equitable Determination on *Pacheco* Factors

Plaintiffs next argue all costs should be denied or reduced because of the unique circumstances of this case. Dkt. #107, #110. Specifically, Plaintiffs contend that considering "[t]his cases arises out of an incomprehensible tragedy," "it is inequitable to now punish widows and orphans for having been called to trial, after already suffering a verdict against them." Dkt. #107 at 1. Thus, Plaintiffs argue this court should exercise its afforded discretion and decline to award costs pursuant to the five factors delineated in *Pacheco v. Mineta*, 448 F.3d 783, 794 (5th Cir. 2006). Most notably, Plaintiffs contend costs should be denied because of Plaintiffs' "limited financial resources," the Defendant's "enormous financial resources," the lawsuit's close and difficult legal issues, and the substantial benefit this case affords to the public. Dkt. #110 at 1-4.

While a strong presumption exists under Rule 54(d)(1) that the prevailing party will be awarded costs, *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 586 (5th Cir. 2006), "a district court may, but is not required to, deny a prevailing party costs where suit was brought in good faith and denial is based on at least one of the following factors: '(1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult legal issues presented; (4) substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources.'" *Smith v. Chrysler Grp., L.L.C.*, 909 F.3d 744, 753 (5th Cir. 2018) (quoting *Pacheco*, 448 F.3d at 794; 10 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE

§ 2668, at 234 (1998). Notably, however, the Fifth Circuit has expressed hesitancy in the denial of costs even when some of the above factors are met. *See Mercer v. Patterson-UTI Drilling Co.*, 717 F. App'x 400, 406 (5th Cir. 2017) (per curiam) (noting it had not decided whether any of the five factors depicted in *Pacheco* present a sufficient reason to deny costs). Additionally, "the losing party's good faith is alone insufficient to justify the denial of costs to the prevailing party." *Id.*

Without citing a single case in which a court declined to award costs under the above legal theory,[7] Plaintiffs first argue costs should be declined because "all Plaintiffs have limited financial resources" and Defendant "has enormous financial resources." Dkt. #110 at 2, 4. Although Plaintiffs do not provide any evidence of their limited financial means, they note that five of the plaintiffs are minor children who lost parents in the shooting, one plaintiff was injured in the shooting and is "not now working," one plaintiff lost his wife in the shooting and now cares for four children, and three plaintiffs "are older and do not have any significant resources." Dkt. #110 at 2. In contrast, Plaintiffs note that the United States's budget in 2019 was $4.45 trillion. *Id.* at 2. Thus, Plaintiffs argue "[i]n comparison, the costs would be ruinous to Plaintiffs who are minor children, a widow and widower, and elderly parents whose children were murdered." *Id.*

The undersigned sympathizes with Plaintiffs and the tragedy they have had to, and continue to, endure. However, despite the court's sympathy, it is bound to follow the Fifth Circuit's precedent. The Fifth Circuit has held that "reducing or eliminating a prevailing party's cost award based on its wealth – either relative or absolute – is impermissible as a matter of law." *Moore v. CITGO Ref. & Chems. Co.*, 735 F.3d 309, 319–20 (5th Cir. 2013) (reversing and remanding a

---

[7] In support of this argument, Plaintiffs cite only *Pacheco v. Mineta* and *Wade v. Peterson*. In *Pacheco*, the court expressly stated it only enumerated the five factors "for the purpose of exposition. We do not decide whether any of these is a sufficient reason to deny costs." 448 F.3d 783, 793 n.18 (5th Cir. 2006). In *Wade*, the court found the objecting party had waived any arguments relating to these factors because she "offered no evidence to show how she might satisfy any of these factors." *Wade v. Peterson*, 416 F. App'x 354 (5th Cir. 2011).

district court's reduction of costs based on the comparative wealth of the parties, noting "the fact that the prevailing party is substantially more wealthy than the losing party is not a sufficient grounds for denying or limiting costs to the prevailing party"). Moreover, the Fifth Circuit has repeatedly required parties to pay prevailing parties their costs even when they are indigent and proceeding *in forma pauperis. See, e.g., Washington v. Paths*, 916 F.2d 1036, 1039 (5th Cir. 1990); *Calton v. City of Garland*, 170 F. App'x 338, 338 (5th Cir. 2006). This precedent underscores the "strong presumption" in this circuit "that the prevailing party will be awarded costs." *Smith*, 909 F.3d at 753 (quoting *Pacheco*, 448 F.3d at 793).

Here, Plaintiffs have not offered any evidence of their financial circumstances. *See* Dkt. #107, #110. Thus, because Plaintiffs have not overcome the strong presumption of awarding costs, and because this circuit has explicitly prohibited a comparative wealth analysis, the undersigned must recommend that Defendant's costs not be reduced based on the financial circumstances of this case.

Plaintiffs next argue the court should reduce costs because the court's "record establishes that this case involved close and difficult legal issues." Dkt. #110 at 2-4. In support, Plaintiffs assert that (1) the District Court ruled in their favor "by denying [Defendant's] summary judgment motions[] while explaining the merits of Plaintiffs' case," (2) they introduced evidence for every issue needed to rule in their favor, and (3) the evidence supported their sought remedy. *Id.*

Plaintiffs' "close and difficult legal issues" argument is unpersuasive. First, the fact that a case progressed past summary judgment is insufficient evidence that it presented a close and difficult legal issue. This fact is highlighted by the District Court's Final Judgment, in which the court stated it "allowed this case to go to trial given the seriousness of the matter and to allow Plaintiffs to expand upon their argument that the Government is not entitled to sovereign immunity

given factual disputes as to critical matters." Dkt. #105 at 41. And second, the District Court's decision does not reflect that this case presented legal questions so close and difficult as to warrant a departure from the presumption that a prevailing party should be awarded costs. The issues presented in this matter were unique, and the facts underpinning the case are indisputably tragic. However, this case was ultimately decided utilizing well-settled law; specifically, the court concluded Defendant is entitled to sovereign immunity and that even if the Defendant did not have immunity, the Government did not negligently undertake a duty towards Plaintiffs. Dkt. #105. Thus, Plaintiffs have not convincingly established that this factor warrants a reduction or elimination of costs.

The court is similarly unpersuaded by Plaintiffs' final argument that costs should be reduced under the "substantial benefit to the public" factor. Dkt. #110 at 4. Plaintiffs have not cited, and the undersigned is unaware, of a single case reducing or declining costs on this ground. Moreover, the tragic circumstances and legal issues of this case do not convey such a substantial benefit to the public as to justify limiting costs. The disposition of this case did not significantly limit, broaden, or alter the scope of sovereign immunity. Additionally, Plaintiffs' argument that this decision may aid policy makers is too tangential to warrant the reduction of costs. Thus, Plaintiffs have not overcome this circuit's "strong presumption that the prevailing party will be awarded costs." *Pacheco*, 448 F.3 at 793.

### D.    Line Item Bill of Costs Objections

Plaintiffs additionally contend Defendant's Bill of Costs is "objectively wrong in numerous spots" and not supported by evidence. Dkt. #107 at 2. These objections are addressed in turn.

### 1.   *Document Production and Trial Exhibit Costs*

Defendant seeks $626.85 in in-house copying fees relating to document production and trial exhibits. Dkt. #107 at 2. Specifically, Defendant alleges it incurred, at $0.15 per page, $130.35 in document production fees related to Plaintiffs' request for production and $496.50 in trial exhibit fees. Dkt. #106 at 4; Dkt. #111 at 3-4. Plaintiffs argue Defendant has not provided receipts of these costs and has failed to show it actually paid these totals. *Id*.

Section 1920(4) permits the taxing of costs for "[f]ees for exemplification and the costs of making copies of any materials where the copies are *necessarily obtained* for use in the case." 28 U.S.C. § 1920(4) (emphasis added). The determination of whether copies are necessary is a matter within the district court's discretion. *Rundus v. City of Dallas, Tex.*, 634 F.3d 309, 316 (5th Cir. 2011). While "costs incurred 'merely for discovery' do not meet section 1920(4)'s 'necessarily obtained'" requirement, "such costs are recoverable if the party making the copies has a reasonable belief that the documents will be used 'during trial or for trial preparation.'" *Id.* (citing *Fogleman v. ARAMCO*, 920 F.2d 278, 285–86 (5th Cir. 1991)). Here, the documents copied in response to Plaintiffs' discovery requests were used for trial preparation as evident by Plaintiffs' discovery requests. *Rundus v. City of Dallas*, 3-06-CV-1823-BD, 2009 WL 3614519, at *3 (N.D. Tex. Nov. 2, 2009) (noting "the established principle that documents requested by an opposing party in discovery are 'necessarily obtained' for purposes of awarding costs to the prevailing party"), *aff'd*, 634 F.3d 309 (5th Cir. 2011). Moreover, a review of the record and Defendant's itemized list of produced documents demonstrates that these costs were related to, and necessarily obtained for, trial.

Additionally, the court affirms the charged rate of $0.15 per page. In *Fogleman*, the Fifth Circuit remanded a bill of costs matter because the prevailing party who copied documents in-

house had failed to prove "the actual cost to the law firm of making these copies or the cost of obtaining copies on the open market." *Fogleman*, 920 F.2d at 287. Here, Defendant has provided that commercial companies in San Antonio quote copies anywhere from $0.10 to $0.20 per page. Based on this fact, Defendant's $0.15 copy fee is permissible. *See Saacks v. Privilege Underwriters Reciprocal Exch.*, CV 16-1149, 2018 WL 3769963, at *5 (E.D. La. July 24, 2018) (affirming on similar grounds a copy fee of $0.25 per page). Thus, Defendant's Bill of Costs motion should be **AFFIRMED** as it pertains to the $130.35 document production copying fees.

Despite providing an itemized chart for the document production copies, Defendant has failed to identify, let alone provide adequate information for the court to determine the necessity of, the "trial exhibit" copies. Defendant merely asserts it incurred costs in making "trial exhibits, copies of which were provided to Plaintiffs and the Court." *See* Dkt. #111; *see also* Dkt. #106; Dkt. #106-1. While Defendant does not need to individually identify each copy made, it must provide more than an entirely generic request for costs. *See, e.g., Richards v. Lufkin Indus. LLC*, 9:14-CV-00136-RC, 2019 WL 6682079, at *6 (E.D. Tex. Mar. 26, 2019) (declining exhibit copying costs because "[m]ost of the listed items do not have any information explaining what was copied or printed"). Moreover, although a prevailing party may be able to recover the cost of photocopying trial exhibit for the court and opposing counsel, without pretrial approval of the exhibits a prevailing party may not tax the production of trial exhibits. *See Leal v. Magic Touch Up, Inc.*, 3:16-CV-00662-O, 2019 WL 162885, at *5 (N.D. Tex. Jan. 9, 2019) (explaining the distinction between taxing photocopies of trial exhibits and taxing the production of trial exhibits) (citing *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319 (5th Cir. 1995)). Here, Defendant has not clarified to what extent it seeks to tax "Trial Exhibits" and, thus, Defendant has not met its burden. *See* Dkt. #106. Accordingly, Plaintiffs' Objection should be **SUSTAINED** as it pertains

to the $496.50 in trial exhibit fees. *See Fogleman*, 920 F.2d at 286 (the party seeking costs bears the burden of establishing costs).

2.    *Witness Fees*

Defendant requests witness fees in the amount of $11,390.00. Dkt. #106. These fees fall under 28 U.S.C. § 1920(3), which allows "fees and disbursements for printing and witnesses." Furthermore, 28 U.S.C. § 1821 allows for the recovery of witness fees for both depositions and trial testimony. Specifically, sections 1821(a)-(d) allow for $40.00 per day for the witness's trial attendance, a common carrier expense at "the most economical rate reasonably available," a per diem subsistence if an overnight stay is required, and costs for mileage, tolls, parking fees or taxicab fares. *See PODS Ent., LLC v. U-Haul Int'l, Inc.*, 2015 WL 5021668, *1 (M.D. Fla. Aug. 24, 2015). Plaintiffs levy numerous objections related to various witnesses' fees.

First, Plaintiffs object to $2,442.77 in witness fees sought for witness Gwendolyn Farmer, arguing Defendant has not adequately proven Farmer's costs and seeks to recover expenses for "five extra days." Dkt. #106 at 3. Upon reviewing the record, Defendant has provided adequate evidence to prove Farmer's recoverable expenses. *See* Dkt. #106-4, #111. However, despite the trial not starting until September 17, 2019, and Farmer's testimony not being expected until September 18, 2019, Defendant seeks to recover expenses from September 13 to September 20, 2020. Defendant flew Farmer to Austin on September 13, 2019, "[i]n an effort to ensure [Farmer] was adequately prepared for trial, was well rested, and travel delays were accounted for." Dkt. #111 at 5. Section 1821 only provides "fees and allowance" for dates "a witness [is] in attendance at any court of the United States," as well as fees "for the time necessarily occupied in going to and returning from the place of attendance . . . ." 28 U.S.C. § 1821(a)(1)-(c)(1). Accordingly, Defendant may not recover costs expended as a result of flying Farmer in five days before the trial.

Thus, costs should not be awarded for expenses Farmer incurred from September 13 to September 16, 2019.[8] Factoring this into Defendant's requested costs, Defendant should be permitted to recover $1,647.36 for expenses incurred related to Gwendolyn Farmer.[9]

Plaintiffs next object to $273.68 in sought costs related to witness Matthew Elledge, contending there is no explanation for why Elledge, who resides in Austin, required $153.86 in mileage and $120.00 in subsistence. Based on Defendant's representations, Elledge was required to drive, park, and be present at the courthouse on September 17 and 18 in anticipation of being called as a witness. *See* Dkt. #111 at 7; *see also* Dkt. #106-1, #106-4. Elledge was not called as a witness until September 19, 2019. Accordingly, Elledge reasonably incurred, and Defendant can tax as costs, three days' worth of witness fees, mileage reimbursement, and parking costs. Thus, Defendant should be permitted to recover $273.68 in costs related to Matthew Elledge.[10]

Plaintiffs object to the $2,502.50 in sought costs related to witness Cesar Guerra. Because Defendant withdraws this request for costs, it should not recover witness expenses related to Cesar Guerra.

Plaintiffs also object to $2,025.61 in sought costs related to witness Jeff McDonald, and $2,539.87 in sought costs related to witness Melissa Miller. For both witnesses Plaintiffs only contest the plane ticket price, arguing the plane tickets were excessive. However, Plaintiffs do not inform the court what transportation price would be reasonable or appropriate. Defendant argues McDonald incurred airline costs of $897.05 and Miller incurred airline costs of $748.54 in large part because witnesses were taken out of order at Plaintiffs' request, resulting in various

---

[8] The court notes it is reasonable to fly in a witness the day before a trial begins – here, September 16, 2019.

[9] This represents statutory witness fees of $200, mileage reimbursement of $59.62, air travel fees of $475.85, hotel fees of $580.00, meal and incidental reimbursements of $244, and taxi/parking reimbursement of $87.89.

[10] While the total on Defendant's bill of costs states $273.86, Defendant asserts the cents differential is a typographical error.

rescheduling fees and, for Miller, two separate trips to Austin. *See* Dkt. #122 at 36 (Trial Transcript). Accordingly, McDonald's and Miller's travel expenses are reasonable and recoverable under section 1821(c)(1). Thus, Defendant should recover $2,025.61 in costs related to witness Jeff McDonald and $2,539.87 in costs related to witness Melissa Miller.

Plaintiffs object to $323.54 in sought costs related to witness Henry Perry, contending the charge is excessive for someone who "lives within the subpoena range of the court and lives locally just north of Austin, Texas." Dkt. #107 at 4. Section 1821 provides that "[a] subsistence allowance shall be paid to a witness when an overnight stay is required at the place of attendance because such place is so far removed from the residence of such witness as to prohibit return thereto from day to day." 28 U.S.C. § 1821(d)(1). Here, Perry spent the night before trial in an Austin hotel after traveling from Killeen, Texas, a journey that constitutes around 70 miles and takes around one hour and thirty minutes. While Defendant is perhaps correct that the overnight stay was beneficial in allowing Perry to be "rested for trial," the Austin courthouse is not "so far removed from [Perry's] residence . . . as to prohibit return thereto from day to day." Accordingly, the overnight stay was not required, and Defendant should not recover the hotel cost of $134.55. Thus, Defendant should only tax $188.99 in costs related to witness Henry Perry.

Plaintiffs next object to the $410.10 in sought costs related to witness Antonio Purnell, again contending the fees are excessive considering Purnell's close residency to Austin. Like Perry, Purnell resides in Killeen, Texas. However, Purnell elected to drive to the courthouse each day, and had to make three round trips during the pendency of the trial. Because Defendant properly seeks to tax the mileage reimbursement and parking costs, Defendant should tax $410.10 in costs related to witness Antonio Purnell.

Plaintiffs finally object to the $871.74 in sought costs related to witness Kendra Williams, arguing that her hotel costs cannot be taxed under section 1821(d)(1) because her residency, Killeen, Texas, is not far enough away from Austin. For the reasons discussed above, the court agrees. Accordingly, Defendant should not be permitted to tax Williams's three nights of hotel stays and, consequently, should recover only $436.74 in costs.

In light of the foregoing, Plaintiffs' objections should be **SUSTAINED IN PART**, and Defendant should recover $7,522.35 in costs related to witness fees.

### 3. *Deposition Fees*

Defendant requests $10,955.33 in costs for multiple deposition transcripts and video recordings. Dkt. #106. Plaintiffs appear to object to only the portion of these costs incurred because of videography, arguing the video recordings was never used at trial and various deposed witnesses lived within the subpoena range of the court. In response, Defendant contends the "video deposition[s] of all witnesses were logically obtained for use in litigation by both parties." Dkt. #111 at 13.

"Although video deposition costs are recoverable costs, *see* 28 U.S.C. § 1920(2), the prevailing party bears the burden of showing that the video costs were reasonably necessary." *Stephens v. City of Austin*, 1:12-CV-659-DAE, 2015 WL 778836, at *4 (W.D. Tex. Feb. 24, 2015) (Ezra, J). "A majority of courts consider video costs reasonably necessary in complex cases where deponents may be unavailable for testimony at trial or where the parties anticipate needing to use the video testimony at trial for other reasons." *Id.*; *see, e.g., Fatava v. Nat'l Oilwell Varco, LP*, No. 2:12–CV–82, 2014 WL 5822781, at *2 (S.D. Tex. Nov. 10, 2014) (permitting video costs where it was unclear, at the time of depositions, if the plaintiffs would be available to attend trial and where significant portions of video footage were used at trial); *Allstate Ins. Co. v. Plambeck*, No.

3:08–CV–388–M, 2014 WL 2980265, at *8 (N.D. Tex. July 2, 2014) (permitting video costs where the deponent was charged with theft at the time of the deposition and counsel reasonably anticipated that she would not be able to appear at trial). "However, where cases are not particularly complex and the [deponent] would have been available for trial testimony, the majority of courts find that video costs are unwarranted." *Stephens*, 2015 WL 778836, at *4; *see, e.g., Sheikk–Abukar v. Fiserv Solutions, Inc*., No. Civ. A. H–09–2769, 2011 WL 5149654, at *1 (S.D. Tex. Oct.26, 2011) (denying video costs in an employment discrimination case with factual circumstances simpler than "those presented in copyright and other complex cases" and where the court did not refer to the video deposition in ruling on the summary judgment motion); *Lear Siegler Servs. v. Ensil Int'l Corp*., No. SA–05–CV–679–XR, 2010 WL 2595185, at *2 (W.D. Tex. June 23, 2010) (denying video costs where the video was for convenience rather than necessity).

Defendant does not articulate why the video depositions were needed; it does not argue this is a particularly complex case, there was a fear that certain deponents would be unavailable for trial, nor assert any other reason explaining why the video depositions were taken. *See* Dkt. #111. Rather, it argues the video depositions are taxable because after they were taken, Plaintiffs argued they would use the video depositions if witnesses were unavailable to testify when called. *Id.* This suggests the video depositions were taken not out of necessity, but rather for convenience. As such, Defendant has not met its burden of showing the video costs were reasonably necessary. Accordingly, the court should **SUSTAIN** Plaintiffs' objection as it pertains to the video-related deposition costs. Thus, upon review of Defendant's itemized deposition costs, Defendant should recover $7,553.47 in costs related to depositions.

####### 4.     *Summons and Subpoena Fees*

Defendant next requests $505.00 in costs for summons and trial subpoena fees. Dkt. #106. Despite Plaintiffs' contentions to the contrary, Defendant has provided ample evidence proving these fees. *See* Dkt. #106-3; *see also* Dkt. #111-5. Moreover, Defendant stipulates that none of the five subpoenaed witnesses in question are government employees or under government control, and that Plaintiffs called all but one of these witnesses during their case-in-chief. *See* Dkt. #106, #111. Accordingly, these costs should be **AFFIRMED,** and Defendant should be permitted to recover $505.00 in summons and trial subpoena costs.

####### 5.     *Trial Transcripts*

Lastly, Defendant seeks to recover $3,945.15 for trial transcripts. Dkt. #106. This amount consists of $1,369.15 for "expert testimony" and $2,576.00 for the "entire trial transcript." *Id.* Plaintiffs object to only the expert testimony sum, contending Defendant seeks to impermissibly bill for expert costs. Dkt. #107 at 5. However, Defendant does not seek to recover expert costs. *See* Dkt. #106-6; *see also* Dkt. #111. Rather, Defendant contends its experts were not able to observe Plaintiffs' experts trial testimony and, consequently, it needed to purchase the trial transcripts of Plaintiffs' experts so that its experts could properly prepare for trial. Dkt. #111 at 14. Given the circumstances, the purchase of these trial transcripts were necessary. *See J.T. Gibbons v. Crawford Fitting Co.*, 760 F.2d 613, 615–16 (5th Cir. 1985) ("The cost of a daily trail transcript is taxable only if it was necessary for use in the case."), *aff'd*, 482 U.S. 437 (1987). Accordingly, these costs should be **AFFIRMED**, and Defendant should be permitted to recover $3,945.15 for trial transcripts.

### E.     Conclusion

In light of the foregoing, the undersigned recommends that Defendant be permitted to recover $19,656.32 in costs. This being said, it is not lost on the undersigned that a stark application of case law as it stands today leads to a result where children and widowers who have lived through a nightmare are saddled with thousands of dollars in litigation costs. Although this is the result that precedent advocates for, it seems to contradict both equity and reason. Put simply, the tragedy that Plaintiffs have had to endure is already too high of a cost.

## IV.     ORDER AND RECOMMENDATIONS

The undersigned **ORDERS** Defendant's Motion to Strike Plaintiffs' Supplement to their Objections to Bill of Costs (Dkt. #114) be **GRANTED IN PART and DENIED IN PART**. Specifically, the court **DENIES** Defendant's Motion to Strike so far as it relates to Plaintiffs' *Pacheco* argument, *see* Dkt. #110 at 1-4, and **GRANTS** Defendant's Motion so far as it pertains to Plaintiffs' specific costs objections, *see id.* at 4-14.

Additionally, the undersigned **RECOMMENDS** that the District Court **SUSTAIN IN PART** Plaintiffs' Objections to Bill of Costs (Dkt. #107), and award Defendant $19,656.32 in costs (Dkt. #106).

## V.     OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the

Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.   *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

SIGNED July 31, 2020.

_____

MARK LANE
UNITED STATES MAGISTRATE JUDGE